### 10037.    ROY *v.* GEORGIA RAILROAD AND BANKING COMPANY *et al.*

A covenant not to sue one jointly liable will not release any one other than the one with whom it is entered into.

Where by accident, mistake, or fraud a writing does not speak the truth, it may be reformed and corrected and be made to speak the truth.

In this case the defendants may introduce in evidence the original writing as well as such other evidence as may be competent by way of attack on the reformed and alleged corrected covenant not to sue; and it is a question for the jury whether the plaintiff released as pleaded by defendant, or merely covenanted not to sue.

The court erred in sustaining demurrers to the plaintiff's amended petition, and in directing a verdict for the defendants.

                DECIDED JULY 17, 1919.

Action for damages; from city court of Madison—Judge Anderson. August 31, 1918.

*Percy Middlebrooks, Samuel H. Sibley,* for plaintiff.

*McDaniel & Black, Cumming & Harper,* for defendants.

LUKE, J. The plaintiff in this case has had a long and no doubt an anxious fight with those who she claims have by their negligence damaged her. This court in *Roy* v. *Georgia Railroad &c. Co.* 17 *Ga. App.* 34 (86 S. E. 328), gave her hope by determining her suit to be good as against demurrer in so far as several of the defendants were pleaded liable. When her case in due course came on for trial, the defendants amended their defenses and claimed that she had released a joint tort-feasor by entering into the following agreement: "In consideration of the sum of two hundred fifty ($250) dollars, received by me, this 2nd day of Oct., 1913, I hereby release and discharge Empire Cotton Oil Company, Madison, Ga., of and from any and all claims which I now have or may have hereafter, by reason of personal injuries sustained by my son, J. A. Roy, resulting in his death, on or about the 11th day of Sept., 1913, or of any cause, matter or thing whatsoever. Release. Witness my hand and seal. Mrs. A. G. Roy (L. S.) C. L. C. Thomas, Witness, Madison, Ga. P. B. Speed Jr., Witness, Madison, Ga." Demurrers to the pleas were overruled, and the plaintiff offered an amendment to the petition, in which amendment she alleged that her agreement and receipt to Empire Cotton Oil Company, while purporting to be a release, was in fact not a release, for the reason that neither she nor the Empire Cotton Oil Company ever regarded the death of her son as due to any negligence of his employer, the Empire Cotton Oil Company, and that the money received by her as evidenced by her written receipt was but a gratuity, and not an effort to release or sell her claim, and at most was only a covenant not to sue; and in the amendment she sought a reformation of the receipt given, so as to make it speak the truth. Demurrers to the amendment were sustained. She then filed a petition in the superior court, praying the aid of equity, to the end that the receipt be reformed, modified, and molded so as to speak the truth and not be such a release as would defeat her remedy against the others she was suing for the tort committed. In the meantime the Empire Cotton Oil Company agreed with her contention, and in lieu of the first writing the

following writing was entered into as a reformation of the first:

"Whereas on October 2, 1913, Mrs. A. G. Roy, gave to Empire Cotton Oil Co. a paper in words as follows:    'In consideration of two hundred and fifty dollars ($250) received by me this second day of October, 1913, I hereby release and discharge Empire Cotton Oil Company, Madison, Ga., of and from any and all claims which I now have or may have hereafter, by reason of personal injuries sustained by my son, J. A. Roy, resulting in his death, on or about the 11th day of September, 1913, or of any matter or thing whatsoever.    Witness my hand and seal.    Release.    Mrs. A. G. Roy. C. L. C. Thomas, Witness.    P. B. Speed Jr., Witness.'    And whereas at said time it was not considered that said Empire Cotton Oil Company was liable to Mrs. A. G. Roy in the premises, nor was it the purpose of either party to appraise her injury or satisfy the same, but it was the purpose of the Empire Cotton Oil Company to pay her said sum in the nature of a gratuity, asking only that she agree not to sue or hold said Empire Cotton Oil Company responsible, and an agreement having the effect of relieving said Empire Cotton Oil Company from any suit by Mrs. Roy, without affecting her right to hold others responsible for her son's death that might be responsible therefor, was intended by both parties, but by accident and mistake of both parties, as to the legal effect and operation of the words used, the language above quoted was used, which it is now claimed operates to release the persons really responsible, if any persons are responsible:    Now in consideration of the premises, and in voluntary reformation of said instrument, to express the true intent of the parties thereto, the same is made to read as follows:    "In consideration of two hundred and fifty dollars ($250) received by me this second day of October, 1913, I hereby agree not to sue Empire Cotton Oil Company, Madison, Ga., on account of any or all claims which I may have or may hereafter have against it, by reason of personal injuries sustained by my son, J. A. Roy, resulting in his death on or about Sept. 11, 1913, or any other matter or thing whatsoever; not relieving or releasing any other person who may be liable therefor.    Witness our hands and seals this August 8, 1916.    Empire Cotton Oil Co., by H. E. Watkins, Vice Pres. (L. S.) Mrs. A. G. Roy. (L. S.) M. E. Keeler, Secty. Empire Cotton Oil Co. [Corporate Seal]."

This branch of her cause then by due course was determined

by the Supreme Court, and in the decision of that court (147 *Ga.* 349, 94 S. E. 218) it was said: "The plaintiff applied to the Empire Cotton Oil Company for a voluntary reformation of the contract, and that company promptly executed an instrument in conformity with the alleged intentions of the parties to the original contract of release, which the plaintiff alleges was a mere agreement not to sue or hold the Empire Company responsible. The contract as thus reformed was duly pleaded in the city court, and the plea was rejected. The case now stands for trial in the city court of Madison. At that stage of the litigation the plaintiff filed an equitable petition in the superior court, seeking (1) To enjoin the defendants from interposing the alleged release as a defense in the city court of Madison. (2) That the release be reformed 'as against the railway companies, in accordance with the voluntary reformation thereof by the Empire Cotton Oil Company.' (3) That the controversy pending in the city court of Madison be tried and determined in the superior court of Morgan county; and that plaintiff have a general judgment against the defendants. While the Empire Cotton Oil Company is named as one of the defendants in the equitable petition, no relief of any kind is prayed against that company. The petition specifically alleges that the Empire Company has voluntarily reformed the instrument. The defendants filed demurrers and answers, attacking the petition for failure to state a cause of action. They also denied the jurisdiction of the court, on the ground that neither of the defendants against whom substantial relief is prayed is domiciled in Morgan county, one company having its domicile in Richmond county, and the others being non-residents of the State, with no office or agent in Morgan county. The primary purpose of the equitable proceeding is to reform the release. Without this it is manifest, and indeed must be conceded, that the suit would be barren and purposeless; for in other respects it can be tried as favorably to the plaintiff in the tribunal first selected as in the last. Without reformation the paper would be as fatal to the recovery in the one court as in the other; and therefore, unless the reformation can be had, there is no basis for the equitable jurisdiction of the superior court. The paper having been voluntarily reformed already in accordance with the original intention of the parties, a court of equity could do no more than has been done. It would

be a vain thing for a court of equity to solemnly decree that third parties must do that which has been voluntarily done. A court of equity can not adjudicate what shall be the effect of a contract as to third persons who took no part in executing the same, by decreeing a reformation as to them. The railroad companies were not parties to the alleged release. It is so alleged in the petition. It was a paper executed between the plaintiff and the Empire Cotton Oil Company. Reformation can go no further than to insert what was by mistake omitted, or to strike what was by mistake unintentionally included in the original paper. Therefore there is nothing for a court of equity to do. What effect the change in the contract as made by the plaintiff and the Empire Cotton Oil Company in their voluntary reformation will have upon the other defendants is to be determined upon the trial of the case." The cause came on again for trial, and by amendment the reformed writing was pleaded by the plaintiff and by her construed to be not such a release as would defeat her right to recover her alleged damages against the defendants.

A covenant not to sue one jointly liable will not serve to release any one other than the one with whom the covenant not to sue is entered into. Where by accident, mistake, or fraud a writing does not speak the truth, it may be reformed and corrected so that it may be made to speak the truth. In this case the defendants may introduce in evidence the original writing as well as such other evidence as may be competent by way of attack on the reformed and alleged corrected covenant not to sue, and it is for the jury to say, under appropriate instructions from the court, whether the plaintiff in fact did release as pleaded by the defendant, or whether she merely entered into a covenant not to sue. Viewing the case as we do, we are of the opinion that it was not error to overrule the demurrers to the defendants' answer, and that it was error for the court to sustain the demurrer to the plaintiff's amended petition. In other words, the plaintiff may attack the release pleaded by the defendant, and the defendants may attack the alleged reformed writing by the introduction of the writings themselves, and such other evidence as may be admissible, for the discovery of the truth.

The court having struck the plaintiff's amendment to her petition, wherein she pleaded the reformation of the original receipt,

and by such order made it impossible for her to recover, and the judgment of this court being that the sustaining of the demurrer to her amendment was error, everything occurring thereafter was nugatory, and the question raised by the Southern Railway Company and the Virginia & Southwestern Railway Company, as to their release by reason of a stipulation in the record as to their liability as determined by the law of this case upon the former adjudication upon the question of the merits of the petition, is not now passed upon. For the reason that the court erred in sustaining the demurrers to the plaintiff's amended petition, the judgment of the court in directing a verdict for the defendants is reversed.

*Judgment reversed.* *Wade, C. J., and Jenkins, J., concur.*