## 33261. REGISTER v. ANDRIS.

DECIDED MARCH 16, 1951. REHEARING DENIED MARCH 29, 1951.

*Gazan, Walsh & Bernstein, Jacob Gazan,* for plaintiff in error. *Harry P. Anestos,* contra.

WORRILL, J. John Andris, on November 17, 1949, brought in the Superior Court of Chatham County an action against Robert Register and Sidney W. Register to recover damages for alleged assault and battery upon him. Subsequently by amendment he dismissed one of the three counts and also struck the name of Robert Register as a defendant. The defendant, Sidney W. Register, filed a plea in bar, alleging that the aforesaid amendment was filed in consideration of $2500 paid to the plaintiff by Robert Register, the alleged joint tort-feasor, in settlement of his liability, and amounted to an accord and satisfaction of the claim against both defendants and also discharged Sidney W. Register. The plaintiff answered, stating that he executed to Robert Register on June 24, 1950, a covenant not to sue in consideration of $2500, but denying that it released Sidney W. Register, and praying that the plea in bar be denied. The court, on a hearing without a jury by consent of counsel, and on these pleaded facts overruled the plea, and the exception here is to that judgment.

Admittedly the sole issue here is whether or not a covenant not to sue executed lis pendens to one of two joint tort-feasors operates as a release to the other. This question is controlled adversely to the plaintiff in error by *Moore* v. *Smith,* 78 *Ga. App.* 49 (50 S. E. 2d, 219). In that case the suit was instituted, as shown by the record in the office of the clerk of this court, on April 16, 1947. The covenant not to sue was executed on August 29, 1947, and the trial was had on September 19, 1947, at which time the covenantee was dismissed as a defendant. On

these facts this court held: "The release from liability, for a consideration, of one of two defendants sued jointly releases the other, for there can be but one satisfaction of the same claim for damage or injury; but, to the contrary, where as here, the clear intendment of the agreement between the plaintiff and the dismissed defendant is but a covenant not to sue and not an accord and satisfaction of the claim itself, the other defendant is not released." See generally, as to the distinction between a covenant not to sue and a release, *Atlantic Coast Line R. Co.* v. *Ouzts*, 82 *Ga. App.* 36 (60 S. E. 2d, 770).

This case was considered by the whole court as provided by the act approved March 8, 1945 (Ga. L., 1945, p. 232).

*Judgment affirmed. Sutton, C.J., MacIntyre, P. J., Gardner and Townsend, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. Upon cursory examination of the questions raised in this case, I thought that the case should be considered by the court as a whole for the reason that I did not think that this court had sufficiently gone into the questions so insistently urged in this case. In my judgment the *Moore* case, relied on by the majority, is but a physical precedent, in that, as I understand the opinion, there is no discussion in that case of the point made here, to wit, that a covenant not to sue made lis pendens is a misnomer and is in reality a release. In the short time I have had to study the question, I have found many cases holding that a so-called covenant not to sue, executed lis pendens, did not release codefendants, but I have not found one that went into and discussed the why's and wherefore's of the conclusion reached. The conclusion reached by many courts, including ours, that a release of a joint tort-feasor releases all, but a covenant not to sue does not, despite the fact that a covenant not to sue is a release as to the one to whom it is given, frankly baffles me. See Editor's note, 53 A.L.R. 1470. To my mind a covenant not to sue when an action has already been filed is an anomaly if not an impossibility. Such an agreement seeks to covenant not to do a whole thing, a part of which has already been done and can have no more legal effect than an agreement that black is white when the rights of a third party are concerned. The agreement in this case did not covenant to dismiss the action and did not provide how protection was to

be afforded the covenantee. The protection had to be by dismissal of the action or forbearance to collect the judgment rendered, or forbearance to take a judgment against the covenantee. I think that either of the latter methods would have amounted to a release. I think also that the dismissal would have been a release. I think the case is the same as if the whole agreement had been one to dismiss the action as to the covenantee for a consideration, which I think would have been a release. To say that the law must take the agreement of the parties to be as expressed in the agreement, no matter under what circumstances it was given, is to render the law impotent to strike down frauds, travesties and deceit. A covenant not to sue an action already filed is not a covenant not to sue, no matter what it is called by the parties or anybody else. A release of one party has been held to be a release of joint tort-feasors when the instrument provided that it did not release joint tort-feasors. Bee v. Cooper, 217 Cal. 96 (17 Pac. 2d, 740). Judge Yankwick, who tried the case just cited, as District Judge wrote the opinion in Jenkins v. Sou. Pac. Co., 17 Fed. Supp. 820. In the Jenkins case the covenant was similar to the instant one. In that case it was held that the covenant not to sue while action was pending was a release even though the parties denominated it a covenant not to sue. In that case the agreement included a statement that the plaintiff did not "waive" his rights as to other defendants and it was held that such provision showed a waiver as to the covenantee. So, in this case, a reservation of rights as to the other defendant shows just as convincingly a waiver of the plaintiff's rights as to the covenantee, and a release of the claim and cause of action against him. In Petroyeanis v. Pirola, 205 Ill. App. 310, it was held: "Where, pending an appeal from a judgment against two defendants in an action in tort, one of such defendants received from the plaintiff in such action, in consideration of a certain sum paid by such defendant, an agreement by the plaintiff to take no action in law or equity or prosecute any writ of execution on such judgment to obtain satisfaction thereof from such defendant, *held* that such agreement was not a 'covenant not to sue' but was a release and payment of the judgment as against both defendants, notwithstanding such was not the intention of the parties as expressed

in such agreement." In my judgment there should be no distinction between the effect of a covenant not to sue a joint tort-feasor and a release of such a one, but so long as there is a difference there should be strict adherence to the rule. The law should not add to the anomalous holdings one to the effect that a party can do an impossible thing by agreeing not to do what he has already done and call a spade a club with impunity.

## On motion for rehearing.

WORRILL, J. In the motion for rehearing attention is called to an inadvertence in referring to the plea filed by the plaintiff in error as a plea in abatement, whereas it was in fact a plea in bar, and the opinion has been corrected accordingly.

It is urged that this court should not have stated that the only issue presented was whether or not a covenant not to sue executed lis pendens to one of two joint tort-feasors operates as a release to the other, because, it is stated, the plaintiff in error also contended that the "so called covenant not to sue" was a misnomer, and was in fact a release and settlement of the entire claim because executed lis pendens and the verbiage showing an accord and satisfaction. This contention was fully considered, but the instrument was, and is now, regarded as being properly characterized as a covenant not to sue, and it is distinctly ruled that such designation is not a misnomer. The argument that it is not a covenant not to sue because executed lis pendens loses sight of the fact that to "sue" is not limited merely to the act of filing a petition in court, but relates to the entire procedure of seeking redress. One or two illustrations will show the appropriateness of the designation "covenant not to sue," even in a case where executed after suit has been instituted. A plaintiff may in a given case be nonsuited or he may dismiss and renew his suit within six months. When thus confronted with the new suit and holding such an instrument as is now under consideration, can it be seriously contended that the covenantee may not appropriately employ it for what it professes to be, namely, a covenant not to sue? To state the question is to answer it.

It is also urged that in Moore v. Smith, 78 Ga. App. 49 (50 S. E. 2d, 219), which we have followed in the present case, the point was not distinctly made that the instrument there was not

a true covenant not to sue because executed lis pendens. While the movant in that case did not use the word "misnomer" he attached to his motion for new trial a copy of an instrument executed on August 29, 1947, after the suit was filed on April 26, 1947, which, as shown in the report of the case, was a *covenant not to sue,* but which the movant insisted was really a *release* of one of the joint tort-feasors and, hence, released him. This court showed by its statement of facts, though it did not specifically mention the date of the execution of the instrument, to wit, August 29, 1947, that it was dealing with a case where *after suit was filed,* on April 26, 1947, a *covenant not to sue* was executed, and as set out by the court in its opinion the date of this instrument is shown to be August 29, 1947. The court manifestly knew, then, that the movant was relying upon a lis pendens instrument, because it showed that the trial was not until September 19, 1947, and that what the movant was invoking was a lis pendens instrument, an instrument which he insisted was a *release,* though without using the word "misnomer" as does counsel in the present case. The same issue was presented there as here, and this court discussed the legal significance of a release, as the movant insisted the instrument executed lis pendens was, and then proceeded to show that it was not a release but was a *covenant not to sue* and did not release the movant. Accordingly, we follow *Moore* v. *Smith,* supra, as decisive of the issue here.

Jenkins *v.* Southern Pacific Company, 17 Fed. Supp. 820, is cited as authority that the "so called covenant not to sue" operates as a release. It is far afield as we shall presently demonstrate. In that case the court held: "An instrument must be given the effect it bears on its face. It is true (as was the case in Kincheloe *v.* Retail Credit Company, supra) that when an instrument states specifically that it is a covenant not to sue, the court cannot interpret it in any other way, *and read into it words of release."* (Italics ours.) Where as here, the agreement states specifically that it is a *covenant not to sue* and never mentions the word release or intimates in the slightest an intention to relinquish the cause of action, could anyone doubt that the court which expressed itself in the Jenkins case as we shall shortly show would regard the instrument here as other than a covenant not to sue? It reads:

*"This covenant not to sue* made and entered into this 24th day of June, 1950, and given by John Andris to Robert Register,

"Witnesseth: That for and in consideration of the sum of two thousand five hundred ($2500) and other valuable considerations, the receipt whereof is hereby acknowledged, the said John Andris does hereby *covenant* with Robert Register that he will never sue Robert Register, nor attach his estate, particularly lots 161 and 162, McKenna Ward, Savannah, Chatham County, Georgia, for or on account of a certain claim for damages described in the plaintiff's petition in a certain action brought by him against Robert Register and Sidney W. Register in the Superior Court of Chatham County, Georgia, which action is numbered 316 on the procedure docket of said court. *It is understood that this covenant not to sue in no way affects the rights of John Andris against Sidney W. Register and is to be construed as a covenant not to sue only.* This *covenant not to sue* may be pleaded as a defense to any action or other proceeding which may be brought, instituted or taken by John Andris against Robert Register or his estate in breach of this *covenant."* (Italics ours.)

The court in the Jenkins case, supra, takes pains to explain why it had to regard the instrument there as other than a covenant not to sue, though it never intimates that a covenant not to sue, as the instrument in the present case manifestly is, releases a joint tort-feasor. In the Jenkins case the instrument read:

"The undersigned, Mrs. Garnett V. Jenkins, and Robert W. Jenkins, by Mrs. Garnett V. Jenkins, his guardian ad litem, of the City of Los Angeles, County of Los Angeles, State of California, *for our heirs, executors, administrators and assigns,* in consideration of twenty-five hundred ($2500), paid by Southern Pacific Company, a corporation, the receipt of which is hereby acknowledged, do by this instrument covenant with the said Southern Pacific Company, a corporation, and Fred M. Dolson, forever to refrain from instituting, pressing *or in any way aiding any claim, demand, action or cause of action* for damages, costs, loss of service, expense or compensation for, on account of, or in any way growing out of, or hereafter to grow out of, the injury or death of Robert L. Jenkins, deceased, hus-

band of the said Mrs. Garnett V. Jenkins, and father of the said Robert W. Jenkins, occurring on the 29th day of March, 1935, or his said death on the 19th day of April, 1935, while in the employ of the said Southern Pacific Company, a corporation . . or from any cause or causes whether set forth in said complaint as aforesaid or otherwise, or at any time from the beginning of the world to the date of this instrument, reserving to the undersigned all rights that they, or either of them, may now have or hereafter have against any other person or persons, firms or corporations because of the death of said Robert L. Jenkins, deceased." Then follows a statement as to non-waiver by the plaintiffs of any claims against any person, persons, firms or corporations not specifically named in the instrument and a provision that the Southern Pacific Company did not admit liability or responsibility for the damages claimed.

The California court said that the instrument used every word of release except the word "release," that in fact it used the terminology ordinarily employed in all forms of release, and it set out in the opinion the form of release usually employed in California and which the court thought the instrument under consideration by it resembled. It pointed out that there was a settlement of the controversy, not only for the plaintiffs, but "for their heirs, executors, administrators and assigns," words which have no place in a covenant not to sue, and that by the specific words to refrain from "instituting, pressing, or in any way, aiding any claim, demand, action or cause of action for damages," etc., it was, in the opinion of the court, clearly not a covenant not to sue but a release and an agreement not to press any demand or cause of action for damages, saying that "the plaintiffs release by reason of the injury arising from the cause of action set forth in the particular complaint," and that, not content with this, the plaintiffs say, in the usual words of all demands, "from any cause or causes whether set forth in said complaint as aforesaid or otherwise, or at any time from the beginning of the world," which latter words, the court said, are to be found in the usual California release. It will at once be seen that there are no such comparable expressions in the instrument in the present case, and we think we have set forth enough of the California court's reasons to demonstrate that it

would never have construed the instrument here, so different in its structure, as other than a covenant not to sue.

*Donaldson* v. *Carmichael*, 102 *Ga.* 40 (29 S. E. 135), is not decisive here. In that case, as pointed out by the court, there was a receipt which "contained an acknowledgment that the plaintiff had been paid, by one of the persons charged in the original petition as a joint tort-feasor, a sum of money which was accepted in *full settlement* for *all* damages suffered or sustained by the plaintiff by reason of her fall into the excavation." The court stated that the plaintiff was not entitled to receive more than one satisfaction for the same injury, and having received the full amount of damages from one of the joint wrong-doers was not entitled to collect any further sum from the other. See *Atlantic Coast Line R. Co.* v. *Ouzts*, supra, where it was held that, under a covenant not to sue, the acceptance from the covenantee of a sum which was less than the full amount of the damages would not bar a suit against the other joint tort-feasor for the balance.

We find no merit in the motion for rehearing, and it is denied.

While thus disposing of the motion for rehearing, it is thought desirable to refer to several caases cited in the dissenting opinion in the present case. We do not understand that the annotations in 53 A.L.R. 1420, 1470, are referred to in the dissenting opinion except as showing a recognition of the distinction between a covenant not to sue and a release, but we refer to these annotations as follows: They show that the general weight of authority is that a covenant not to sue is entirely distinct from a release. In fact, the comment of the annotators at the conclusion of the annotations is, not that any contrary view should be entertained, but that "with all due respect to the courts that evolved the rule that a release of one co-obligor discharges the other, it is suggested that as the reasons for the rule have long since disappeared, the courts should, in line with legislation on the matter, declare the rule to be that a release of one co-obligor (or a covenant not to sue him) does not release other co-obligors who are not parties to the agreement, and thus wipe out the distinctions between covenants not to sue and releases based upon the form the agreement takes,—and thus relieve this subject of the confusion that now exists, and at the same

640

time effect a rule that really gives effect to the intention of the parties." We mention this view of the annotators, dealing with "co-obligors" rather than "joint tort-feasors," where certainly the relationship of the latter is no closer, not to express any opinion ourselves as to whether or not the rule as to releases should be changed, but to point out that the annotators do not show anything contrary to what we have ruled, though they do show that they are of the opinion that, following much legislation on the subject, the law as to *releases* should be changed generally, making it comport with the intention of the parties to the agreement.

Bee *v.* Cooper, 217 Cal. 96, does not remotely deal with a covenant not to sue, the court merely taking occasion to say that the agreement there "to dismiss" was not "a mere covenant not to sue."

Jenkins *v.* Southern Pacific Company, 17 Fed. Supp. 820, cited in support of the dissenting opinion, has been referred to hereinbefore and is readily distinguishable as pointed out in detail.

Little need be said regarding the Illinois case cited in the dissenting opinion, Petroyeanis *v.* Pirola, 205 Ill. App. 310, further than that in that case a *judgment* had been obtained against both defendants, a situation wherein entirely different considerations exist as between the two defendants as compared to their status before the plaintiff has converted his cause of action into judgment.

*Motion for rehearing denied. All the Judges concur, except Felton, J., who dissents.*